IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Ross Development Corporation, | Civil Action No: 2:08-3672-MBS |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| Fireman's Fund Insurance Company; United States Fire Insurance Company; PCS Nitrogen, Inc., | |
| Defendants. | |

Plaintiff Ross Development Corporation ("Ross") filed the within action in the Charleston County Court of Common Pleas on October 15, 2008 against Defendants Fireman's Fund Insurance Company ("FFIC"); United States Fire Insurance Company ("USFIC"); and PCS Nitrogen, Inc. ("PCS") seeking a declaratory judgment that policies purchased by Ross from FFIC and USFIC provide coverage for claims asserted by PCS against Ross in *Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*, C/A No. 2:05-2782 (hereinafter "*Ashley II*"), and that FFIC and USFIC have a duty to defend and indemnify Ross. Compl. ¶ 18. Ross also alleges that: 1) FFIC and USFIC are in breach of contract for failing to defend Ross in *Ashley II*; 2) Ross's shareholders are entitled to coverage for PCS's claims against them under certain FFIC policies in a related state court action; and 3) FFIC is in breach of contract for failing to defend the Ross shareholders in a related state court action. The case was removed to federal court on November 3, 2008. Entry 1.

This case is before the court on Ross and FFIC's motions for approval of a settlement between those two parties, which motions were filed on March 18, 2011. Entries 91 and 92. PCS filed a response in opposition to the settlement on April 18, 2011. Entry 97. This case is also before

the court on PCS's motion for leave to file an amended answer and crossclaims. Entry 96. PCS seeks to allege claims against FFIC and USFIC as a judgment creditor of Ross after the entry of judgment in *Ashley II*. The court held a hearing on the motions for approval of the proposed settlement between Ross and FFIC, as well as PCS's motion for leave to file an amended answer and crossclaims on August 12, 2011. Entry 113.

## RELATED CASES

In *Ashley II*, Ashley II of Charleston ("Ashley") brought a cost-recovery action under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), as amended, 42 U.S.C. §§ 9601, *et seq.*, to recover from PCS costs incurred to remediate 33.95 acres of a 43 acre parcel of land in Charleston, South Carolina ("the Site"). PCS filed contribution claims pursuant to CERCLA § 113(f)(1) against Ashley, Ross, and several other parties. Subsequent to a bench trial, the court issued findings of fact and conclusions of law holding PCS jointly and severally liable to Ashley for the harm at the Site and holding Ross liable to PCS in contribution.

In *PCS Nitrogen, Inc. v. Burhmaster et al.*, 2008-CP-10-5269, S.C. Court of Common Pleas, PCS seeks an order finding the Ross shareholders liable to PCS as a creditor of Ross and fixing damages against each Ross shareholder in the amount of assets distributed to him or her by Ross during liquidation, as well as injunctive relief preventing the Ross shareholders from further distributing or dispersing Ross's assets. In *PCS Nitrogen, Inc. v. Ross Dev. Corp.*, 2:09-CV-03171-MBS (hereinafter "*PCS v. Ross*"), PCS has sued Ross, the Ross directors, and the Ross shareholders alleging claims for fraudulent conveyance, civil conspiracy, and breach of fiduciary duty.

2

**DISCUSSION**

I.   **Motions to Approve Settlement Between Ross and FFIC**

Ross and FFIC seek a court order preliminarily approving the proposed settlement and barring future claims pursuant to the FFIC policies. Entries 92 at 1; 91 at 1. Ross contends that the proposed settlement is in the best interests of Ross, its former directors, and its former shareholders because: 1) continued litigation would be expensive; 2) the Ross shareholders will not be put at risk because other claims against Ross are unlikely; and 3) FFIC has several policy defenses that make coverage questionable. Entry 92 at 2, 8. FFIC contends that the proposed settlement is fair and reasonable because they contend the policy exclusions would bar coverage. Entry 91-1 at 1.[1]

PCS opposes the motion for settlement contending that:

* the agreement should be modified to reflect the fact that although Ross is releasing its claims against FFIC, this release will not extinguish the policies at issue and PCS will retain its right to seek coverage as a judgment creditor of Ross;

* the agreement should be modified to require FFIC to deposit the $330,000 settlement payment into a trust fund administered by the court so that the court can equitably allocate the payment among: (i) defense costs incurred in the CERCLA suit, (ii) the judgment entered against Ross in the CERCLA suit, and (iii) the defense costs incurred in the shareholder suit; and

* the indemnification provision of the proposed settlement agreement should be struck from the proposed settlement.

"The voluntary resolution of litigation through settlement is strongly favored by the courts." *S.C. Nat. Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) (citing *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)). A trial court has inherent equitable power to enforce summarily a settlement

---

[1] USFIC does not oppose the proposed settlement to the extent that it does not affect whether or not the USFIC policies are triggered. Entry 94 at 1. At the hearing, Ross recognized that USFIC will have several defenses going forward including the issue of whether or not the FFIC policies have been exhausted, triggering the USFIC policies.

agreement "when the practical effect is merely to enter a judgment by consent." *Columbus- Am. Discovery Group v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 298 (4th Cir. 2000) (citing *Millner v. Norfolk & Western Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981)). However, when the rights of third parties may be affected, court approval of a settlement prior to consummation is appropriate. *See, e.g.,* Fed. R. Civ. P. 23(e) (judges must approve class action settlements to ensure fairness, reasonableness, and adequacy for absent class members); Fed. R. Civ. P. 23.1(c) (requiring court approval for settlements in derivative suits); *Duncan v. Alewine*, 255 S.E.2d 841, 845 (S.C. 1979) (indicating that where settlement affects the rights of unborn and unknown heirs or beneficiaries, it is proper for the court to find that the settlement is in their best interests before approval); S.C. Code Ann. § 15-51-41 (requiring court approval for settlements of wrongful death and survival actions).

Ross and FFIC have suggested that the court's evaluation of the proposed settlement should be similar to its role in evaluating a class action settlement. Entries 92-3 at 6; 91 at 1. Therefore, the court will make a determination as to whether, as a whole, the settlement is fair, adequate and reasonable to all individuals and entities affected. *See S.C. Nat. Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990). In making a determination as to whether or not a settlement is reasonable and fair, the court need not "turn the settlement hearing 'into a trial or a rehearsal of the trial nor need it 'reach any dispositive conclusions on the admittedly unsettled legal issues in the case" or "establish that as a matter of legal certainty the subject claim or counterclaim is or is not worthless or valuable." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975)(internal quotations omitted).

### A.     Facts Relevant to Proposed Settlement

FFIC was Ross' primary insurer for several years. The parties have not filed all of the policies that they have located through discovery with the court. However, several policies have

been filed to provide examples of the policy terms at issue. On November 26, 2007, after being notified of the claims against Ross in the related cases, FFIC determined that it would defend Ross subject to a full reservation of rights. Entry 92-6 at 1. By letter dated March 12, 2008, FFIC notified Ross that it had determined that it had no duty to defend or indemnify Ross in *Ashley II* or the related cases. Entry 92-6 at 13.

Ross and FFIC advised the court by letter dated September 20, 2010 that they had reached a settlement in principle. Entry 96-3 at 2. By letter dated October 8, 2010, PCS's counsel notified FFIC's counsel that judgment had been issued in *Ashley II* on September 30, 2010 and demanded that PCS be included in any settlement of Ross's action against FFIC. Entry 96-4 at 2-3. By letter dated October 20, 2010, FFIC's counsel responded to PCS stating that it did not intend to include PCS in the settlement. Entry 96-5 at 2.

The terms of the settlement proposed by Ross and FFIC are as follow. FFIC agrees to pay Ross $330,000 "in full and final settlement of any and all claims, past, present and future, which have been or which hereafter may be asserted by Ross for defense and/or indemnification from [FFIC]." Entry 92-1 (hereinafter "Proposed Settlement") ¶ 1. Ross agrees that:

> in consideration of the payment by [FFIC] of the Settlement Amount to Ross, **any and all obligations which now or hereafter may exist on the part of [FFIC] arising from the claims which have been or which hereafter may be asserted by Ross, including claims for natural resources damages, under any and all coverages of the Policies will be deemed to have been extinguished.** Ross expressly accepts the payment by [FFIC] of the Settlement Amount to Ross in full and complete satisfaction of any and all obligations which now or may exist on the part of [FFIC] with respect to any request for insurance coverage from Ross under any and all coverages of the Policies, including but not limited to any obligation on the part of [FFIC] to investigate, defend, pay legal fees or costs, or to pay administrative, engineering or consulting costs or fees, settle claims or suits, or to pay or contribute to settlements, judgments, damages to natural resources, investigative or remedial costs pertaining thereto.

Proposed Settlement ¶ 2 (emphasis added).

> Upon receipt by Ross of the Settlement Amount, **Ross, its former directors, officers, and shareholders, and all other persons or entities identified as named insureds or additional named insureds under the Policies, shall fully release and forever discharge [FFIC]**, its parents, subsidiaries, affiliated companies, predecessor companies, successors in interest and all of their past and present officers, directors, employees, shareholders, representatives and attorneys of and **from any and all claims**, actions, causes of action, rights, liabilities, obligations and demands of every kind and nature, known and unknown, past, present, and future, **for insurance coverage from [FFIC] under all coverages of the Policies, including but not limited to damages to the natural resources of any kind or nature.**

Proposed Settlement ¶ 3 (emphasis added).

> **Ross agrees to defend, indemnify, save and hold [FFIC] harmless** from and against any and all past, present and future claims or suits which may arise against [FFIC] by or on behalf of Ross, its former directors, officers, shareholders, and/or all other persons or entities identified as named insureds or additional named insureds under the Policies, including but not limited to any claims for contribution, indemnification, subrogation, allocation, apportionment, reimbursement, coverage, declaratory judgment, direct action, other compensatory damages, or requests for information based upon, arising out of, or related in any way to the Policies and/or this Agreement (hereinafter collectively referred to as "Indemnified Claims") in an aggregate amount not to exceed $330,00.

Proposed Settlement ¶ 8 (emphasis added). Ross also agrees that the payment of the settlement amount is in exchange for a "complete policyholder release" the effect of which "shall be as if no coverage was ever issued by [FFIC] to Ross." Proposed Settlement ¶ 9. Ross and FFIC agree that the Proposed Settlement does not constitute an admission that coverage exists under the FFIC Policies. Proposed Settlement ¶ 12.

### B. Whether PCS has Rights that May be Affected by the Settlement

Ross and FFIC contend that PCS cannot object to the settlement because PCS is not a judgment creditor of Ross and has no direct action against Ross's insurers. Entries 100 at 1; and 101 at 2, 6. The court disagrees.

6

CERCLA § 113(g)(2)(B) provides that in any CERCLA action, a trial court is required to enter a declaratory judgment on liability for response costs, and that this declaratory judgment is binding in future actions to recover further response costs. 42 U.S.C. § 9613(g)(2)(B). In its second amended order and opinion in *Ashley II*, the court held PCS jointly and severally liable for the harm at the Site under CERCLA § 107(a). As a result, the court held all other liable parties, including Ross, liable in contribution to PCS.[2] Although PCS may not collect upon its judgment until it has paid more than its share of the response costs, *see United States v. Atl. Research Corp.*, 551 U.S. 128, 138 (2007) (finding that the meaning of the term "contribution" in CERCLA is the same as in the traditional sense and is defined as the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault.")(citing Black's Law Dictionary 353 (8th ed. 2004)), it is a judgment creditor of Ross and may seek a declaratory judgment as to coverage.

The argument that PCS cannot maintain a direct action against FFIC or USFIC is without merit.[3] South Carolina case law demonstrates that a judgment creditor of an insured can pursue a

---

[2]  CERCLA § 113(f) provides: "Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title [CERCLA § 107(a)], *during or following* any civil action under section 9606 of this title [CERCLA § 106] or under section 9607(a) of this title [CERCLA § 107(a)]." 42 U.S.C. § 9613(f) (emphasis added); *see also Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 166 (2004) (a contribution claim can be made during or after a CERCLA § 107(a) claim).

[3]  Ross cites *S.C. Dep't of Health & Envtl. Control v. Commerce & Indus. Ins. Co.*, 372 F.3d 245, 259 (4th Cir. 2004) for the proposition that "[a] direct action against an insurer cannot be maintained under South Carolina law unless one of two criteria is satisfied: (1) privity of contract between the claimant and the insurer; or (2) an express statutory grant of the right to restitution." *Id.* at 259. However, that case, and the South Carolina case upon which it is based are distinguishable from the case before the court.

In *S.C. Dep't of Health & Envtl. Control*, the appellants, several companies that had agreed to clean up a piece of property and sought to maintain a restitution action against the insurance carriers of the property owner, which was in bankruptcy. The appellants contended that their cleanup of the property would increase the value of the property, thus conferring a benefit upon the property owner; and that because the property owner was in bankruptcy and the insurers had provided evidence of

7

direct action against an insurer. *See Adcox v. Am. Home Assur. Co.*, 188 S.E.2d 785, 786-89 (S.C. 1972) (third parties that had verdicts against insured after a jury trial were able to file crossclaims for payment of their judgments in suit by insured against insurer for a declaration of coverage); *Carroway v. Johnson*, 139 S.E.2d 908, 908-09 (S.C. 1965) (plaintiff who had obtained a judgment against an insured pursued an action against both insured and insurer to recover the amount of the judgment, which the jury awarded); *Cooper v. Georgia Cas. & Sur. Co.*, 136 S.E.2d 774, 776 (S.C. 1964) (action by insureds' judgment creditor against liability insurers of insured); *Hunter v. S. Farm Bureau Cas. Ins. Co.*, 129 S.E.2d 59, 59-61 (S.C. 1962) (plaintiff's intestate who had recovered judgment against insured instituted an action against automobile insurance company to recover on judgment); *McPherson By and Through McPherson v. Michigan Mut. Ins. Co.*, 412 S.E.2d 445 (S.C. Ct. App. 1991) (allowing claim brought against city insurer by pedestrian injured by a city car to proceed to judgment and noting pedestrian had settled his claim with city); *Doe, John 34, et al. v. Church Ins. Co., et al.*, Case No. 2001CP10001088, 2001 WL 35947347 (S.C. Ct. Comm. Pl. Oct. 26, 2001) (finding that the plaintiffs had no right to maintain a declaratory judgment action regarding

---

financial responsibility to the property owner, they were liable to appellants for restitution because they did not have to pay to clean up the Site. *See South Carolina Dep't of Health & Envtl. Control*, C.A. No. 2:00-1582-CWH, Entry 57 ¶¶ 72-76. The Fourth Circuit ruled however, citing *Major v. National Indemnity Co.*, 229 S.E.2d 849, 850 (S.C. 1976) that the claims against the insurers should be dismissed. The Fourth Circuit reasoned that no direct action for restitution could be maintained against the insurers because there was no allegation that appellants were in privity of contract with the insurers, and South Carolina law did not provide statutory authorization for such a direct action. *S.C. Dep't of Health & Envtl. Control*, 372 F.3d at 259. A key distinction between *S.C. Department of Health & Environmental Control* and the case before the court is that in *S.C. Department of Health & Environmental Control*, there was never an action against the insured, and in the case before the court, PCS obtained a judgment against Ross. In addition, in *Major*, the Supreme Court of South Carolina ruled, not that a direct action could not be maintained against an insurer without statutory authority or privity of contract, but that such an action could not be maintained *solely* against an insurer. 229 S.E.2d at 849-50. In the case before the court, PCS brought an action against Ross, the insured, and obtained a judgment prior to bringing its action against the insurers. Therefore, these cases are inapposite.

insurance coverage unless and until the plaintiffs obtained a judgment against an insured that the insurance company refuses to satisfy). In addition, at least some of the FFIC policies provide that a judgment creditor of the insured can sue FFIC. *See* FFIC Policy numbers: LA-325-22-08, LA-332-42-27, and MXC-80097528.

### C. Proposed Release of Claims and Extinguishment of the FFIC Policies

PCS argues that while nothing prevents Ross from releasing its own rights to pursue coverage under the FFIC policies, the proposed settlement should not be permitted to extinguish PCS's rights under the FFIC policies. Entry 97 at 12-13, 17. The court agrees. Although Ross may give up any rights it may have in a settlement with FFIC, under the law, Ross and FFIC may not extinguish the rights of any individuals or entities who are not parties to the settlement agreement. *See Ins. Co. of N. Am. v. United States*, 159 F.2d 699, 701 (4th Cir. 1947) ("It is well established that the cancellation of an insurance policy does not affect rights which have already accrued under the policy in favor of the insured or of a third person."); Couch on Insurance 2d § 67:230 ("'Where the contract of insurance provides for liability to third persons, the insurer and the insured cannot terminate such a contract by their voluntary action to the prejudice of a claimant's rights which have already vested.'"); 7 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 2d, § 45:902 (1981) ("[I]f a cause of action has accrued to an injured person, the parties to the contract of insurance cannot by any release, agreement, or collusion destroy the right of the injured person to indemnity.").

### D. Earmarking of the Settlement Funds for Defense Expenses

PCS objects to Ross earmarking the settlement funds for defense and litigation expenses instead of for payment of the judgment entered against Ross in *Ashley II* contending that this would unfairly benefit the Ross directors over PCS as Ross's judgment creditor. Entry 97 at 17. Ross

9

contends that earmarking the settlement proceeds for litigation expenses is appropriate because it is consistent with FFIC's duty to defend, which is broader than the duty to indemnify. Entry 101 at 12. Ross also contends that the proposed use of the settlement funds for litigation expenses will benefit not just the Ross directors, but also the Ross shareholders who have advanced attorneys fees in this case and related cases. Entry 101 at 2-3. Ross further contends that the Ross directors are statutorily entitled to indemnification by Ross for their defense costs. Entry 101 at 11.

An insurer's duty to defend is separate from its obligation to pay a judgment rendered against an insured. *S.C. Med. Malpractice Liab. Ins. v. Ferry*, 354 S.E. 2d 378, 380 (S.C. 1987) (citing *Sloan Constr. Co., Inc. v. Central Nat'l Ins. Co. of Omaha*, 236 S.E.2d 818 (S.C. 1977)). In South Carolina, an insurer's duty to defend is broader than its duty to indemnify. *Liberty Life Ins. Co. v. Comm. Union Ins. Co.*, 857 F.2d 945 (4th Cir. 1988) (citing *Sloan Constr. Co., Inc. v. Central Nat'l Ins. Co. of Omaha*, 236 S.E.2d 818 (S.C. 1977)); *see also* 16 Williston on Contracts § 49:103 (4th ed.). Pursuant to S.C. Code Ann. § 33-8-520, a corporation is required to indemnify a director who is "wholly successful, on the merits or otherwise, in the defense of any proceeding to which he was a party because he is or was a director of the corporation against reasonable expenses incurred by him in connection with the proceeding."

PCS's claims against the Ross directors remain pending in the *PCS v. Ross* case. Therefore, it is not yet clear whether the Ross directors will be "wholly successful" in defending themselves such that they will be entitled to indemnification from Ross. As a result, the court finds that until such time as the Ross directors are "wholly successful" in defending themselves against action by PCS, it would be appropriate to limit the use of the settlement proceeds to: 1) costs accrued by Ross in defending itself in *Ashley II*; and 2) payment of the judgment entered against Ross in *Ashley II*.

The court declines, however, to take on the role of administering the settlement proceeds.

### E.    Indemnification of FFIC

PCS objects to paragraph eight of the proposed settlement, which generally provides that Ross will indemnify FFIC against claims which may arise against FFIC by or on behalf of Ross. Proposed Settlement ¶ 8. PCS contends that this provision violates PCS's rights under the policies as a judgment creditor and that FFIC has no right to indemnification under the insurance contracts. Entry 97 at 13, 21. While both Ross and FFIC indicate in their papers that the indemnification provision would not apply to claims asserted by PCS against FFIC, *see* Entries 100 at 10-11; 101 at 3, 12, FFIC indicated at the hearing that claims made by PCS could fall within the indemnification provision. The court finds that approval of the proposed settlement agreement would be contingent upon clarification of this issue.

### F.    Conclusions on the Proposed Settlement

Based upon the foregoing, the court declines to approve the proposed settlement between Ross and FFIC unless: 1) Ross and FFIC agree that the settlement will not extinguish the rights of individuals or entities who are not parties to the settlement agreement; 2) until such time as the Ross directors are "wholly successful" in defending themselves against action by PCS, the settlement proceeds will only be used for defense costs accrued by Ross in *Ashley II* and/or to pay the judgment entered against Ross in *Ashley II*; and 3) the effect the indemnification provision will have if PCS makes claims against FFIC is clarified.

### G.    Notice to the Ross Shareholders

As the court noted at the August 12, 2011 hearing, the notice that was sent to the Ross Shareholders was deficient in several of ways. If settlement between Ross and FFIC is ultimately

approved, an amended notice incorporating the following changes should be sent to the Ross Shareholders:

* on page four, the notice should be amended to state: "the insurance companies assert numerous defenses and exclusions in their policies including exclusions that eliminate coverage for **many** pollution claims.";

* the notice should clarify that there is no possibility that the settlement funds will not be exhausted by defense expenses;

* the notice should notify the Ross shareholders of what will happen in the event that the settlement proceeds fall short of all defense costs;

* the notice should reflect that the court has limited the use of settlement proceeds to defense costs accrued by Ross in *Ashley II* and/or to pay the judgment entered against Ross in *Ashley II*;

* the notice should indicate that EPA could, based upon the court's judgment in *Ashley II*, bring an enforcement action against Ross; and

* the notice should state the date, time and location of the fairness hearing.

In addition, efforts must be made to update the addresses of the former Ross shareholders and to re-send any returned notices.

## II.     PCS's Motion to Amend

PCS seeks to amend its answer and to allege the following crossclaims against FFIC and USFIC: 1) declaratory judgment that there is coverage for PCS's judgment against Ross; and 2) breach of contract.

### A.     Facts Relevant to Motion to Amend

This case was stayed soon after it was removed to federal court pending the court's ruling on a motion to remand. Entry 41. On June 16, 2009, after the court denied the motion to remand, a scheduling order was issued and discovery began. Entry 52. On March 10, 2011, the court issued

a second amended scheduling order, which is the scheduling order currently in effect in this case. The March 10, 2011 scheduling order provides a deadline of July 29, 2011 for the filing of motions to amend pleadings. Entry 90. On March 18, 2010, Ross and FFIC filed their motions for approval of the proposed settlement. Entries 91 and 92. On April 18, 2011, PCS filed its motion for leave to file an amended answer and to file crossclaims. Entry 96.

**B.     Standard**

Federal Rule of Civil Procedure 15(a) provides that at this stage of a litigation, "a party may amend its pleading only with the opposing party's written consent or the court's leave," which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(d), which addresses supplemental pleadings provides that: "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Rule 13(e) provides that a court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading." Fed. R. Civ. P. 13(e). Rule 13(g) provides that a "pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action. . . ." Fed. R. Civ. P. 13(g). None of these rules directly address supplemental pleadings for the purpose of asserting crossclaims. However, Rules 13 and 15 provide the court with the discretion to allow an amendment of the type PCS seeks. *See Rebuild Am., Inc. v. Spears*, Civil Action No. 2:08-0845, 2010 WL 2787823, at *3 (S.D. W.Va. July 14, 2010) (noting that Rule 15(d), Rule 13(e) and Rule 13(g) are all discretionary and that it does not matter which controls with regard to amendments to assert supplemental crossclaims).

The disposition of a motion to amend is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, "leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Foster v. Wintergreen Real Estate, Co.*, No. 08-2356, 2010 WL 325959, *6 (4th Cir. 2010).  This rule favors resolving cases on their merits. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).  Mere delay, by itself is not sufficiently prejudicial to warrant denial of a motion to amend. *Id.*

### C.     Timeliness, Prejudice, and Bad Faith

Ross contends that PCS's motion to amend should be denied because: 1) PCS could have moved to amend its pleading right after the court issued judgment in *Ashley II* in September 2010 instead of waiting until April 2011, *see* Entry 104 at 2; and 2) the motion to amend is a tactical maneuver to thwart the proposed settlement, Entry 104 at 3.  The court disagrees.

First, PCS's motion to amend its pleading to add crossclaims is timely.  The motion was filed on April 18, 2011 well before the scheduling order deadline.  In addition, Rule 13 does not place a time limit on motions to supplement pleadings to assert after acquired claims.  Second, PCS was not dilatory in seeking to amend its pleading, and the circumstances do not indicate that PCS's motion to amend is made in bad faith.  PCS could not assert any crossclaims until after it had obtained judgment against Ross in *Ashley II*.  At the time PCS obtained judgment, Ross and FFIC had already notified the court and the other parties that they had a settlement in principle.  However, it was not until March 18, 2011, when Ross and FFIC moved for approval of their settlement that the terms of the settlement were disclosed to the court and to PCS.  Third, it does not appear that PCS's motion to amend would prejudice any party.  PCS's motion to amend would not cause significant delay in

14

the case because: 1) discovery is ongoing, and 2) PCS proposes to litigate the same coverage issues as Ross. In addition, both FFIC and USFIC were notified of PCS's claims against Ross in *Ashley II*. PCS's claims in *Ashley II* indicated that PCS could become Ross's judgment creditor and seek a declaration of coverage under the policies.

### D.     Futility

A proposed amendment to a pleading is futile if it "fails to state a claim under the applicable rules and accompanying standards. . . ." *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)). "Leave to amend . . . should only be denied on the ground of futility when the proposed amendment is clearly insufficient . . . on its face." *Foster*, 2010 WL 325959 at *6 (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)).

####         1.     Whether Insurance Coverage Exists

FFIC contends that PCS's motion to amend should be denied as futile because the FFIC policies do not afford coverage for Ross's share of liability in the *Ashley II* litigation.[4] Entry 103 at 2. PCS contends that the coverage questions in this case are complex and that they cannot be properly addressed until the record is developed. Entry 105 at 3. PCS specifically contends that the pollution exclusions do not bar all coverage for the harm at the Site because: 1) some of the policies cover "sudden and accidental" pollution and some of the pollution on the Site was caused by accidental leaks from Planters's pipes, *see Ashley II*, 2:05-2782, Entry 563 ¶¶ 36, 64 and 69; and 2) all policies cover harm caused by fire and a fire caused all of the cPAH contamination at the Site,

---

[4]     FFIC and USFIC also argue that PCS has no standing to assert claims directly against FFIC and USFIC. Entries 102 at 2; 103 at 2. However, as the court ruled above, as a judgment creditor of Ross, PCS has standing to assert the proposed claims against FFIC and USFIC.

*see Ashley II*, 2:05-2782, Entry 563 ¶ 39. Entry 105 at 9-10. In light of PCS's arguments and the terms of the policies made available to the court, the court finds that PCS's claims are not "clearly insufficient" on their face.

### 2. Whether PCS's Proposed Claims against USFIC are Ripe

USFIC contends that PCS's proposed claims against it are not ripe and should not be permitted because: 1) the USFIC policies are excess policies that do not attach to claims until primary coverage is exhausted; and 2) PCS has not paid any remediation costs yet and the remediation will not take place, if at all, until far in the future. Entry 102 at 2, 3, 4. USFIC argues that if the court permits PCS to make claims against USFIC, the court should require PCS to plead its basis for claiming that: 1) USFIC as an excess carrier has a present obligation to PCS, 2) USFIC has breached alleged currently-owed obligations to PCS, and 3) any request for a declaration of rights or recovery against USFIC is something other than a hypothetical request that seeks an advisory opinion from the court. Entry 102 at 4.

A court cannot decide a claim that is not ripe for adjudication. *See Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003). The ripeness doctrine is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Pacific Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 200 (1983). In determining whether a case is ripe for review, courts consider: 1) the fitness of the issues for judicial decision; and 2) the hardship to the parties of withholding court consideration. *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 188 (4th Cir. 2007). "An issue is not fit for review if it rests upon contingent future events that may not occur as anticipated, or [] may not occur at all." *Id.*

Despite the dictates of the ripeness doctrine, the Declaratory Judgment Act provides that federal courts "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C.A. § 2201. Federal courts are afforded a wide range of discretion in deciding whether or not to assert jurisdiction over declaratory judgment actions. *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). The Fourth Circuit has held that a district court's discretion to assert jurisdiction over a declaratory judgment action "should be liberally exercised to effectuate the purposes of the statute and thereby afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." *Aetna Cas. & Surety Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937). A federal district court should normally entertain a declaratory judgment action within its jurisdiction when it finds that declaratory relief 1) "will serve a useful purpose in clarifying and settling the legal relations in issue," and 2) "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994)(citing *Quarles*, 92 F.2d at 325)(internal citations and quotations omitted)).

Because this is a diversity case, the court must apply South Carolina law in determining whether PCS's claims against USFIC would be ripe. Although the court has not found a South Carolina case on point, most courts appear to take the same approach with regard to determining whether or not a claim for declaratory relief pursuant to an excess insurance policy is ripe. This approach focuses on the likelihood that the excess insurance policies will be reached. For example, in *Warren v. American Bankers Insurance*, 507 F.3d 1239 (10th Cir. 2007), the Tenth Circuit applied Colorado law and noted that the Colorado state court of appeals had recently held that "a claim for declaratory relief is not ripe unless the plaintiff can show there is a reasonable likelihood that the

17

excess policy will be reached." *Id.* at 1241 (citing *DiCocco v. National Gen. Ins. Co.*, 140 P.3d 314 (Colo. App. 2006)).  In *Assoc. Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32 (2d Cir. 1992), the Second Circuit, applying New York law, held that a contingent liability "does not necessarily defeat jurisdiction of a declaratory judgment action" and that courts should focus on "the practical likelihood that the contingencies will occur." *Id.* at 35 (citing 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2757, at 587 (2d ed. 1983)).  In coming to this holding, the Second Circuit noted that "litigation over insurance coverage has become the paradigm for asserting jurisdiction despite 'future contingencies that will determine whether a controversy ever actually becomes real.'" *Id.* (citing 10A Wright & Miller, supra, at 586).  *See also Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251 (S.D.N.Y. 2010) (analyzing the likelihood that the liability limits on a primary insurance policy would be reached); *Tocci Bldg. Corp. of New Jersey, Inc. v. Virginia Sur. Co.*, 750 F. Supp. 2d 316 (D. Mass. 2010) (applying the Second Circuit's practical likelihood approach).

       The court concludes that PCS should be permitted to state claims against USFIC because: 1) PCS and USFIC take different positions regarding the applicability of the policies at issue indicating that PCS's proposed claims against USFIC would serve a useful purpose; 2) the high cost of remediating of the Site, which was at one point estimated at $8,021,240 (*see Ashley II*, C/A No. 2:05-2782, Entry 627 ¶ 15), may mean that some or all of the FFIC policies would be exhausted; and 3) a judgment in the action would afford the parties relief from uncertainty by clarifying the applicability of the excess policies.  However, the court agrees with USFIC that PCS should be required to plead its basis for claiming that: 1) USFIC as an excess carrier has a present obligation to PCS, and 2) USFIC has breached currently-owed obligations to PCS.

### E. Conclusions on Motion to Amend

PCS's motion for leave to file an amended answer and crossclaims is granted. In its amended pleading, PCS must plead its basis for alleging that: 1) USFIC as an excess carrier has a present obligation to PCS, and 2) USFIC has breached currently-owed obligations to PCS.

### CONCLUSION

The court denies Ross and FFIC's motions for preliminary approval of their settlement (Entries 91 and 92) unless: 1) it is clarified that the settlement will not extinguish the rights of individuals or entities who are not parties to the settlement agreement; 2) the settlement proceeds will only be used for defense costs accrued by Ross in *Ashley II* and/or to pay the judgment entered against Ross in *Ashley II*; and 3) the effect the indemnification provision will have if PCS makes claims against FFIC is clarified. **Ross and FFIC shall have fourteen (14) days from the entry of this order to notify the court of their intentions.** If Ross and FFIC choose to go forward with the settlement, the court will set a fairness hearing to address final approval of the proposed settlement. After the fairness hearing is set, Ross must send an amended notice to each of its shareholders.

PCS's motion for leave to file an amended answer and crossclaims (Entry 96) is **granted**. PCS must plead its basis for alleging that: 1) USFIC as an excess carrier has a present obligation to PCS, and 2) USFIC has breached currently-owed obligations to PCS. **PCS shall file its amended pleading within ten (10) days of the entry of this order.** The parties shall also submit a proposed revised scheduling order to the court.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
The Honorable Margaret B. Seymour
United States District Judge

August 19, 2011
Columbia, South Carolina