IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Ross Development Corporation, ) | |
| ) | C/A No. 2:08-3672-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER AND OPINION** |
| Fireman's Fund Insurance Company, ) | |
| United States Fire Insurance Company, ) | |
| and PCS Nitrogen, Inc., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| PCS Nitrogen, Inc., ) | |
| ) | |
| Cross-Claimant, ) | |
| ) | |
| vs. ) | |
| ) | |
| Fireman's Fund Insurance Company and ) | |
| United States Fire Insurance Company, ) | |
| ) | |
| Cross-Defendants. ) | |
| _____) | |

On October 15, 2008, Ross Development Corporation ("Ross") filed an amended complaint in the Court of Common Pleas for the County of Charleston, South Carolina, against Fireman's Fund Insurance Company ("FFIC"), United States Fire Insurance Company ("USFIC"), and PCS Nitrogen, Inc. ("PCS"). ECF No. 1-2 at 8-13. Ross seeks a declaration that various FFIC and USFIC insurance policies covering periods between 1972 and 1992 provide coverage for its liability in *Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*, No. 2:05-2782 (D.S.C.) ("*Ashley II*"), and in two related cases. Ross also alleges that FFIC and USFIC have breached their contractual duty to defend by refusing to provide a defense in these cases. On

November 3, 2008, FFIC removed the action to this court. ECF No. 1. On August 29, 2011, PCS filed a cross-claim against FFIC and USFIC, seeking to establish coverage under Ross's policies because PCS is a judgment creditor of Ross. ECF No. 120. PCS also alleges that FFIC and USFIC breached one or more insurance contracts issued to Ross by refusing to defend and indemnify Ross in *Ashley II* and in two related cases. *Id.* at 6-8. On September 26, 2011, Ross filed a second amended complaint against FFIC, USFIC, and PCS. ECF No. 125.

In an order entered on August 10, 2012 (the "August order"), the court decided nine motions for summary judgment or partial summary judgment filed by the parties. ECF No. 226. The court entered judgment in favor of FFIC and USFIC on all of Ross's claims and PCS's cross-claims. *Id.* at 25. On August 29, 2012, PCS filed a notice of appeal. On September 7, 2012, Ross moved pursuant to Rule 59(e) of the FEDERAL RULES OF CIVIL PROCEDURE to amend or correct the judgment, or for reconsideration as to the portion of the August order granting summary judgment on Ross's claim for breach of the contractual duty to defend. ECF No. 232. FFIC and USFIC filed responses on September 24, 2012. ECF No. 233 & 234. Ross replied on October 4, 2012. ECF No. 236.

The matter is before the court on Ross's motion to amend or correct the judgment, or for reconsideration.

## I. STATEMENT OF THE CASE

A detailed recitation of this matter's factual and procedural background can be found in the August order. ECF No. 226. Summarily, this case arises out of an action brought by Ashley II of Charleston, LLC ("Ashley") pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), involving the clean-up and remediation

of the Columbia Nitrogen Site ("the Site"), a 43-acre parcel of land in Charleston, South Carolina. The portion of the court's August order addressing the duty to defend focused on insurance policies that contain a qualified pollution exclusion which provides that the policies do not cover:

> bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

*See, e.g.*, ECF No. 208-11 at 4. In the August order, the court held, in part, that neither FFIC nor USFIC had a duty to defend Ross in *Ashley II* because PCS's third-party complaint against Ross and the facts known to FFIC and USFIC did not raise a reasonable possibility that Ross would be held liable for damages covered under any of the policies at issue in this case. ECF No. 226.

## II. STANDARD OF REVIEW

FED. R. CIV. P. 59(e) provides a mechanism for an aggrieved party to petition the court to alter or amend a judgment under certain limited circumstances. "In general, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat'l Fire Ins.*, 148 F.3d 396, 403 (4th Cir. 1998). Motions for reconsideration are inappropriate merely to introduce new legal theories or new evidence that could have been adduced during the pendency of the prior motion. *Keene Corp. v. Inter'l Fid. Ins. Co.*, 561 F. Supp. 656 (N.D. Ill.), *aff'd*, 736 F.2d 388 (7th Cir. 1982). Also, "[b]ecause of the interests in finality and conservation of judicial resources, Rule 59(e) motions are not at the disposal of an unsuccessful party to rehash the same arguments and facts previously presented." *Keyes v. Nat'l R.R. Passenger Corp.*, 766 F. Supp. 277, 280 (E.D. Pa. 1991) (internal citation and quotations

omitted). The Fourth Circuit recognizes only three limited grounds for a district court's grant of a motion under Rule 59(e): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice. *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). The Fourth Circuit has emphasized that counsel's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion. *Id.* at 1082 (citing *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990)).

### III. DISCUSSION

Ross contends that the court's order should be amended to correct a clear error of law or to prevent manifest injustice. First, Ross contends that the court applied the incorrect legal standard when it evaluated whether FFIC and USFIC had a duty to defend Ross in *Ashley II*. Specifically, Ross contends that the court applied a "reasonable probability" standard when South Carolina law requires insurers to defend whenever there is a "possibility" of coverage. ECF No. 232 at 1. Ross argues that the court's "reasonable probability" standard implies that the duty to defend exists in a narrower range of circumstances. Second, Ross maintains that the court incorrectly considered facts that were not included in PCS's third-party complaint against Ross in *Ashley II* and that were unknown to FFIC and USFIC when it refused to defend Ross. *Id.* at 2.

**A.** *Whether the Court Applied the Correct Legal Standard*

Although Ross's argument centers on the court's use of the language "reasonable probability," there also appears to be disagreement between the parties as to whether an insurer has a duty to defend when there is a "possibility" of coverage or when there is a "reasonable

4

possibility" of coverage. The court first considers what is the correct legal standard and then whether the court applied it in its August order.

Under South Carolina law, if the facts alleged in the complaint and the facts known by the insurer "raise a reasonable possibility that the insured may be held liable for some act or omission covered by the policy, then the insurer must defend." *Liberty Life Ins. Co. v. Commercial Union Ins. Co.*, 857 F.2d 945, 949 (4th Cir. 1988) (citing *Emp'rs Mut. Liab. Ins. Co. v. Hendrix*, 199 F.2d 53, 56 (4th Cir. 1952)); *see also City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund*, 677 S.E.2d 574, 578 (S.C. 2009) *(*applying a "possibility" standard but citing *Gordon–Gallup Realtors, Inc. v. Cincinnati Ins. Co.*, 264 S.E.2d 38, 40 (1980) ("Since the policy expressly covers negligence and the facts alleged in the complaint create a reasonable possibility of recovery under that theory, we hold the trial court did not err in concluding appellant had a duty to defend.")). Stated another way, "an insurer has no duty to defend an insured where the damage was caused for a reason unambiguously excluded under the policy." *B.L.G. Enter., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999).

In the part of the August order addressing whether FFIC and USFIC had a duty to defend, the court set forth the "reasonable possibility" standard. ECF No. 226 at 15. In conclusion, the court stated: "[v]iewing the evidence in the light most favorable to Ross and PCS, the court finds that the complaint against Ross and other information known to FFIC and USFIC did not raise a reasonable possibility that Ross would be held liable in *Ashley II* for property damages covered under any of the policies at issue in this case." *Id.* at 22. Although some courts have applied a *reasonable* possibility standard, courts often ask whether the allegations against the insured and facts known to the insurer raise a possibility of coverage.

*See, e.g.*, *Hartsville*, 677 S.E.2d at 574. The court finds no case that discusses whether there is a difference between these standards. In this regard, the court does not find that the decision to employ a "reasonable" possibility standard over a possibility standard is consequential. To the extent that Ross's motion for reconsideration is based on the court's decision to use a reasonable possibility standard, this does not present a clear error of law.

In the course of its analysis, the court committed two scrivener's errors when, in two instances, the court wrote "reasonable probability," instead of "reasonable possibility." ECF No. 19 & 20. In the first instance, after reviewing PCS's third-party complaint against Ross, the court held that the third-party complaint "in itself raises no reasonable probability that Ross would be held liable for property damages covered by policies containing the qualified pollution exclusion." ECF No. 226 at 19. This error had no impact on the court's decision to grant FFIC's and USFIC's motions for summary judgment as to Ross's claim for breach of the contractual duty to defend. The court's holding was based on its determination that "[n]othing in the complaint suggests that Ross's alleged liability was based on anything other than pollution that occurred in the course of its manufacturing activities." *Id.* In this regard, the court noted that the third-party complaint was devoid of any allegation that the release of pollutants was "sudden and accidental" so as to place PCS's claim against Ross outside the bounds of the qualified pollution exclusion. *Id.* Instead, the third-party complaint described the processes that Ross, then known as Planters, used to manufacture fertilizer and that EPA found to be associated with the contamination at the Site. The court is satisfied that PCS's third-party complaint against Ross alleged damages that are "unambiguously excluded" under the policies at issue. *B.L.G. Enter., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999); *Greenville County v. Ins. Reserve*

*Fund*, 443 S.E.2d 552 (S.C. 1994). Thus, the court finds that it did not commit clear error in holding that PCS's third-party complaint did not by itself trigger USFIC and FFIC's duty to defend Ross in *Ashley II*.

In the second instance, the court used the term "reasonable probability" when it considered whether FFIC's knowledge of a 1963 fire that caused some of the contamination at the Site created a duty to defend Ross. ECF No. 226 at 20. This scrivener's error had no impact on the court's decision to grant FFIC's motion for summary judgment as to Ross's claim for breach of the contractual duty to defend. The court concluded that FFIC's knowledge of the 1963 fire did not "raise a reasonable probability that Ross would be held liable in *Ashley II* for covered property damage." *Id.* The court reasoned that the fire, which occurred nearly ten years before the first FFIC policy took effect, would not have triggered coverage unless it continued to cause new damage to third-party property between 1972 and 1992. *Id.* Ross and PCS identified no facts known to FFIC, nor could the court find any, that would have have supported a reasonable inference that such damage to third-party property occurred. *Id.* The court noted that such a conclusion would have required "pure speculation" by FFIC. *Id.* To say that FFIC could only have concluded that it had a duty to defend through speculation is the equivalent of saying that the facts known to FFIC did not raise a reasonable possibility of coverage. Thus, the court finds that it did not commit clear error in concluding that FFIC's knowledge of the 1963 fire did not trigger a duty to defend Ross in *Ashley II*.

Finding no clear error of law or need to correct a manifest injustice, the court denies Ross's motion to amend or correct the judgment, or for reconsideration as to this ground.

However, the court will file contemporaneously herewith an amended order to correct the scrivener's errors.

### B. *Whether the Court Considered Facts Unknown to FFIC and USFIC at the Time They Refused to Defend*

First, Ross argues that the court considered the allegations from Ashley's complaint against PCS when it analyzed whether PCS's third-party complaint against Ross implicated the duty to defend in *Ashley II*. Second, Ross argues that, had the court considered PCS's third-party complaint by itself, the court would have concluded that USFIC and FFIC had a duty to defend Ross in *Ashley II*. In this regard, Ross maintains that the third-party complaint triggered the duty to defend because it did not allege that Planters intentionally caused the contamination at the Site or that the contamination arose in the course of Planters' routine business operations.

First, the court did not consider the allegations that Ashley asserted against PCS as relevant to the issue of whether FFIC and USFIC had a duty defend Ross in *Ashley II*. As Ross observes, such consideration would have been improper because Ashley's allegations against PCS involved damages that post-date Planters' ownership of the Site. Although the court cited portions of Ashley's complaint against PCS under the heading "background," there is no indication in the August order that the court considered those allegations germane to the question of whether USFIC or FFIC had a duty to defend Ross. ECF No. 226 at 15. In fact, in its analysis, the court refers only to the third-party complaint against Ross and exclusively quotes language from that complaint. *Id.* at 18-19.

Ross's second argument asks the court to reconsider its holding that USFIC and FFIC did not have a duty to defend, but without considering allegations from Ashley's complaint against

PCS. As discussed above and in the court's August order, the court's conclusion that PCS's third-party complaint against Ross did not trigger the duty to defend was based on the fact that nothing in the complaint indicated that Ross's alleged liability was based on the "sudden and accidental" release of pollutants rather than pollution that occurred in the ordinary course of manufacturing phosphate fertilizer. Although Ross may disagree with the court's interpretation of the allegations in PCS's third-party complaint, mere disagreement does not establish a clear error of law. *See Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993).

Accordingly, the court denies Ross's motion to amend or correct the judgment, or for reconsideration as to this ground.

### IV. CONCLUSION

Upon careful consideration of the entire record, the court hereby **DENIES** Ross's motion to amend or correct the judgment, or for reconsideration, ECF No. 232, of the August order granting USFIC's and FFIC's motions for summary judgment. However, to correct the scrivener's errors discussed above, the court contemporaneously issues herewith an amended order.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
Margaret B. Seymour
Chief United States District Judge

Columbia, South Carolina
November 15, 2012